At this time, we call case number 2019-41015, M.D. v. Next Friend v. Greg Abbott, et al. Mr. Hughes, you may proceed. I'm sorry, Your Honor. May it please the Court. The new preclearance requirement imposed by the District Court violates the mandate rule because it alters the terms of the modified injunction that this Court instructed the District Court to implement quote, without further changes. This new injunction also raises serious federalism concerns because it allows an unelected federal judge to veto the child placement decisions that the Texas Legislature entrusted to Texas agency officials and Texas judges. Counsel, you're not going to get very far referring to, quote, unelected federal judges. You're talking to three of them. I understand, Judge Barksdale, and I did not mean that to be insulting at all in any way, simply for purposes of federalism, though the point is that the state has a strong sovereignty interest in making child placement decisions unless there has been a specific constitutional violation that needs to be remedied. And here, what the District Court has done... Hasn't the constitutional violation already been determined? That's not before us. That's exactly correct, Judge Barksdale. And my point is that has been determined, and this Court has affirmed limited provisions to remedy constitutional violations that were determined. But at the same time, it instructed the District Court no more. With no further changes, it was saying no new injunctive provisions and no changes to the limited injunctive provisions that we have upheld. Can you clarify something for me? I saw in the red brief some discussion, I think it's on page 35, 36, that the state really doesn't intend to engage in any of these transfers, and I'm not aware that the state has responded to that statement. Does the state, in fact, intend to engage in these transfers? Judge Ho, the answer to that is we may if it's necessary. In other words, we hope not to have to transfer children. We hope the situation doesn't come up where a provider says, for example, as one provider has already done, I'm not going to... A number of providers have already said, I'm not going to accept additional children from the PNC in this placement because of the awake night supervision requirement. One provider has left the system entirely because of that. We hope that that does not continue. We hope that there's not a need for that, but in order to retain flexibility, it may be necessary in the future to do this. So what about this testimony that the red brief cites, Ms. Blackstone? Yes. Christine Blackstone, who's the assistant commissioner, testified at the hearing that the cottage home providers that we have spoken to, by and large, and this is confirmed, I think, in the monitor's report, they really want to serve the children that are in their care. They're doing their best. But the requirement of awake night supervision has been tremendously difficult for them, both financially, and the state has stepped in to provide assistance in that regard. But for some of them also, they've just said it's inconsistent with our model in terms of what we have in the cottage home environment. And so I think it is true that we're hoping not to invoke this, but at the same time, because it's an order that modifies an injunction, we had to appeal it within 30 days or lose the right to do so. We couldn't wait until we needed to do it and then come back and try to appeal it later. So we appealed it at that time, and in large part because of the mandate will problem that this is simply a structural problem with the district court has gone beyond the scope of what this court contemplated in the proceedings on remand, simply to limit it up to implement the modified injunction as written without any further changes. So what, let's say you're right about the mandate rule issue, but let's nevertheless just argue endo assume that the district court had a point. Is your view that the case could just come back here and, and this court could theoretically allow a change in the injunction? I think in that instance, the only way that that could happen would be suppose the plaintiffs could ask the court to modify its mandate. I think there's an exception for that under extraordinary circumstances for some kind of injustice. Or just that the plaintiffs could appeal the district court could, you know, again, under your theory, the district court could dutifully, uh, adhere to the mandate, uh, that we, that our court issued, but then appeal to this court. I'm just trying to figure out what, are you saying there's no mechanism? It's just too late or that it was simply done by the wrong court. Well, to be clear, first of all, it's too late in the sense that this was not an issue that came up previously when the awake night supervision order was expanded and that expansion was upheld by this court. There was nothing in that provision that said the state cannot move children from placements where it's required in order to comply with it. And so if there had been a concern, I take your merits argument that there, no, there is no change necessary. I understand the merits argument. I'm asking really just a process point, if you will. Let's say they had a valid point, but that, uh, that, that this, uh, uh, pre-approval or whatever you want to call it is an appropriate change, but that's stipulate that you may have a point that that was barred to the district court by our previous ruling. What is the result of that? That is just too late. Nobody can change it or that the case has come back here. Well, I think that the first place to start would be if the plaintiffs felt that a change was necessary, they could file a motion under rule 60 B and ask the court to make a change. And if the court found that the district court found that that was satisfied, there could be under appropriate circumstances changes under rule 60 B, but that's of course, not what happened here. Plaintiffs never filed such emotion. They never sought this pre-clearance requirement at all. Um, and so I don't think it's the case that nothing, just say though that that motion is barred under our previous mandate. I think it would depend on the circumstances. If it were this exact situation that they were asking for in rule 60 B and what the purpose of the motion is to do is to change the substantive terms of the modified injunction that this court said no further changes to, then yes, I think district court would have to be very careful to avoid running a foul of the mandate because otherwise, if, if all the court meant was the district court, uh, can make whatever changes it wanted to the one into the injunction. I don't think it would have said implement the modified injunction with no further changes. Counsel, can you help, help a little bit here with the idea that withhold further changes must not mean really strictly no further changes because in Stuckenberg too, the panel held that the district court's implementing injunction for caseworker workload assessments didn't violate the mandate rule and allowed those to be it. These instructions, it allowed some flexibility. So are you saying it had flexibility that day, but we shouldn't have flexibility this day? Well, they cut off future flexibility. Judge Elrod, it's significantly circumscribed a future eligibility and that to answer your question, the distinction is the mandate was different between the two decisions. In the first decision, this court remanded with instructions to I think it was for proceedings not inconsistent with this opinion. That's a fairly standard, broad, uh, type mandate. In the second opinion, it said implement the modified injunction at the permanent injunction with the changes that we have made without further changes. That's a very different mandate and a much more limiting instruction for the district court to be carried out. I'd like to point out as well that, that the notion that this is somehow implementing the awake night supervision order is simply wrong. It doesn't further its purpose. It's a change in the terms of that order. The, the awake night supervision order resulted from the district court's finding that placements with more than six children housed under a single roof left without overnight supervision, that there were, there were risks of, of bad behavior going on at night that it, that it wanted to stop. But it never made any such finding and plaintiffs never sought any such finding with respect to smaller placements of six or fewer children. And so if the, these larger placements are riskier for children and isn't a better rule to allow the state if necessary to move children into, to those placements, to put it another way, isn't it better to eliminate a risk than to simply, um, to monitor a known risk. I'd like to also get back to the point that your honors raised in the questions. The purpose of this, the, uh, without further changes language was to clearly establish the parameters of the modified injunctions that we, the defendants would come into compliance with them and bring an end to this decade long litigation. And if the district court can move the compliance goalposts, uh, by changing the terms of that modified injunction, I submit to the court that we're nowhere near the end of this litigation because we're going to continue to have disagreement over those, uh, changes and probably more appeals. This is the fifth time that the court has heard oral argument,  in appeals arising out of this litigation. Uh, I would hope it would be the last, but I think what that depends upon is, uh, the importance of enforcing the mandate rule to limit the proceedings in the district court to simply implementing the modified injunction as written and as modified by this court. Counsel, you, you argue that the pre-approval injunction is not needed to ensure compliance with the 24 hour supervision injunction. Uh, the district court disagrees. Do we owe the district court any deference? Uh, Judge Elrod, I don't think any deference is owed to the question, uh, primarily under the mandate rule. That's a question of law. Um, and in terms of whether it's necessary to enforce it again,  the district court of course is free to enforce the awake night supervision provision as written. It has already done so. And we have paid $150,000 in fines for three days after the November 5th, uh, show cause hearing that where we were not able to comply with all of the verification verification requirements for that. So the district court certainly free to go about that, but what it cannot do is change the terms of the awake night supervision order in the name of implementing it and make something that was previously lawful. That is, uh, moving Children and putting them in a smaller, safer placement. And now say that can't be done without prior permission under threat of contempt. If a district court is subjecting a party to contempt for undertaking a lawful action to comply with an injunction, it's axiomatic that it is changing the terms of that injunction. Um, I understand,  Judge Barksdale, your point. I take your point about federal judges. And again, I have nothing but the greatest respect for federal judges for this court in particular. But I am saying, though, uh, my point about federalism is that the Supreme Court has recognized that these institutional reform injunctions raise sensitive federalism concerns and the power of a state to make placement decisions for the foster Children in its custody is a very sensitive concern, uh, in that vein. And here it's undisputed that Texas law entrusts those placement decisions to D. F. P. S. And Texas judges in their oversight capacity. Well, hasn't that point been been clarified or established or put to rest with the prior litigation? In this case, as I said, we there was a constitutional violation. That's not in question. That's exactly right. I don't know why you're going back and talking about the sensitivity of Children's placement, etcetera, when all we're dealing with is was the mandate followed and the answer to that judge Barksdale is because this is an additional requirement being tacked on. It was not something that was litigated previously. It was not something that this court upheld. It is not part of the modified injunction. And so if I were here complaining about things that provisions that this court upheld and said were necessary to remedy constitutional violations, then yes, your point would be made on that. But here we're talking about a new additional requirement that this court did not uphold and did not give the district court the freedom to add on to the modified injunction in the name of implementing it. If, if the court is, if the district court we're going to be interpreting the injunction, for example, if it had an ambiguous term, it would still have to be implicit in the injunction somewhere that the, the new provision was there, but there's nothing in the modified injunction that implicitly or expressly allows this preclearance requirement. The district court has imposed. It's simply something new, not contemplated by this court and therefore outside of the scope of the mandate. And unless the court has further questions, I'll reserve the remainder of my time for rebuttal. Thank you, Mr. Hughes. Thank you, Mr. Ward. Thank you, Your Honors. And may it please the court. A year ago, this court ordered defendants to provide full time supervision to all children in group placements immediately. It mandated the district court to implement that order. And why is that? I take it that's because there's a special concern when it comes to these homes with seven or more children. Yes, Your Honor. As, as this court recognized twice in both Stukenberg opinions, the perhaps the most egregious problem with these large group placements is a lack of overnight supervision. And, you know, there were homes with seven or more raise special, serious concerns that are, that are not present or at least less present in smaller homes. Is that correct? That, that is correct, Your Honor. If that is true, then why is the district court now suddenly saying we want to discourage transfers from the more serious environments to less serious environments? Your Honor. Kind of a dramatic change from its previous trajectory. Well, Judge Hill, I don't think the district court has said that she wants to discourage a move towards smaller placements. The whole point of a pre-approval regime is, you know, think of it like a pre-clearance in the voting rights context. It's to slow this down to tax the process and presumably to give the court the opportunity to reject what it previously would never reject. Isn't that, doesn't that have to be the reason for this new provision? Well, Your Honor, there, there, there may be something to slowing it down, but just to you know, this, this whole issue goes toward the state's mischaracterizations. And I put that in plural because there's at least three different ways in which the state has mischaracterized the approval provision of how the approval provision works. You know, it, it doesn't say, it doesn't say that this, that the district court is going to deny approval for this kind of move. There is a, there is a difference between an orderly transition to smaller placements, which we think would be a welcome development. And I think the district court would agree with that. And a herky jerky, abrupt moving of children around, perhaps just to meet the technical numerical thresholds or technical compliance with the order. The, the state in its reply brief, it draws an analogy between children and gasoline and matches being stored in a house that one problem with that analogy is children are not inanimate objects, you know, moving, moving a child can be disruptive to the child as, as the state itself has argued the state talks about, but by saying that it's disruptive, I think that's proving the point I'm trying to get across, which is before it, wasn't the understanding was seven or more is a sensitive, serious concern. And so we want to encourage getting out of that or else you have to have this 24 hour mandate. Now you're trying to discourage getting out of the seven plus homes. And ultimately what I'm trying to get at is this sounds like a substantive change. It may or may not be warranted, but why isn't this a substantial, meaningful change in the law of this case from what it was before? I don't think it is a, a substantial or a substantive change at all. It is, it is, it's not a change at all. It is an administrative measure for implementing this order there. There are, you know, there, there are two concerns, two concerns, smaller placements offer less of a risk of inadequate supervision, but for children who remain in the larger placements, as judge Barksdale pointed out that has been adjudicated. The lack of supervision in these larger placements has already been adjudicated as a constitutional violation. And this court has ordered the remedy of full-time supervision. So there, the, the, the primary purpose of the pre-approval provision and the rest of the district court's contempt order, which the state has not appealed from, you know, the state doesn't challenge the finding of contempt and that it was out of compliance is to ensure that for the children who remain in the larger placements, that the full-time supervision is implemented. One, one thing that the approval provision prevents is just playing a shell game with numbers, shuffling children so that the state can report that it is in compliance because, Oh, on this day, this particular placement has only six children because we move the seven  children. So that's a possibility. The district, but that that would be violation of the current injunction. Would it, wouldn't it, it, it, it would, which is exactly why this provision to, to, to deal with that problem. And if we need to clarify the previous ruling to, to make that point, we can do that. I guess what I'm wondering though, is, you know, at what point is a court of appeals allowed to bring repose? As I think council suggested, the court has done, I mean, are you suggesting that there's just this eternal process that, that there always has to be the opportunity for change or, or does the court of appeals have the power to say we're done? No more changes. Let's move forward. Before you finish, finish that question I was about to say not at all. So, so it may be more toward the latter part of your question. And I apologize for my compound question. Let me make it easier. Can a court of appeals say no more changes to the injunction by the district court? I, I think a court of appeals can say that this. Approval provision is not a change to the injunction affirmed by this court. It is, it is implementing that provision. Your honor asked, you know, Isn't the, the scenario of moving children. Playing a shell game just to, just to hit the numerical threshold. Isn't that something that violates the, the existing injunction. And the answer to that is yes. That's why, that's why this provision is merely an administrative measure to help implement that injunction. The district court. Is well aware of a history of the state's dismissive at times, dishonest attitude and conduct toward compliance in this case. And that was a, a large focus of the contempt proceeding is, you know, the state's history of not being forthcoming, not being candid about what is actually going on in the system. Is there anything that would prevent. Plaintiffs from coming back to this court to make a change rather than going to the district court in light of the mandate language. I don't, I don't think so. Your honor. I think, um, I think that the,  The distinction. You're making motion. Um, The possibility of, uh, requesting a change to the mandate. But this, you know, this provision that isn't in front of the court today. Is it is not. An example of where you would need to do that because. It is not a substantive change to the injunction. It is, it goes toward implementing the injunction. To, to illustrate that I'd like to touch on one thing that Mr. Hughes argued, which is that this, this moves the goalposts. And, and you can't keep moving the goalposts for compliance. It doesn't move the goalposts. It doesn't move the goalposts. It helps line up the kicker to get it through the goal. That this. Mandates a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a. A, a, a, a, a, a, a, a, a, a, a, a, a. If, if the state is in full compliance. With this court. Mandate. To implement full-time supervision in all placements with, with seven or more children. Then the approval provision has no effect. There there's no need to invoke it. Oh, well, hold on. Let's talk. Sorry, please. Well, I just wanted to follow up on your goalpost thing. And you keep saying it's just an administrative measure. It's not a new injunction. But the state of Texas could be found liable. For violating this administrative. Measure and held in contempt. Couldn't it. If it theoretically, it theoretically could be. And so if you can be filled. And so why is this not a new injunction in your football analogy? Instead of starting the kicker where the ball is downed on the play before. You're going to make the state always go to the middle of the field. To line up right in the middle of the goalpost. And if you always that's a new injunction to make, you know, in your football analogy. I know we're not talking about football. We're talking about children, a very serious subject. But you used a football analogy. It's requiring the state to do something different. It's not just a means to do what you were already doing before. So going to the middle of the field. Is different and it's a new injunction. But, you know, instead of where the ball was down. Judge Elrod and. I'll probably just get away from the football or other analogies just to speak more directly. The thing is, you cannot divorce the approval provision. From the substantive injunction that it is helping to implement. The. How long will the approval take? The the district court has been available. Almost on a 24 7 basis. You know, she said that and we cited there's a transcript from a phone conference early after. After the court's mandate issued where the judge said. You know, I'm I'm available on a 24 7 basis and that has happened. You know, as, as we discussed, the state actually has not invoked this provision. It's been almost a year and they're saying that. They haven't had a need to. They also claim that they're now in full compliance. So there should be no, no real need to as long as they stay in compliance. But there are other examples. Of there. That aren't exactly on the record because they happen after, after this order was issued. But, but there are examples. And I think state's council. Would not disagree that there are examples of. The state coming to the court through the monitors. Or various exceptions. To other. Other provisions in the injunction. I think that's a good question. And the court has been. Very responsive. And I don't think there's an instance where she has said no. When there was a good reason to make an exception. In the case of the approval provision. We're not even talking about an exception that the state. And it's reply brief mentions that the state shouldn't have to come and ask for an exception. There's not really. An exception. I mean, this, this provision doesn't say you can't move children. It doesn't. But the process can have important ramifications. So this could be hypothetical. The state in good faith. Finds out that there is a specific danger at a specific group home. And so wants to transfer some of these kids. To an environment that's a six or fewer. Previous to this change. They could do so right now. Right. If, if they were. If they were moving the children for a reason, other than the full-time supervision order. They, they could do it right now. Under. A child due to a specific threat. From a seven plus home to a six or minus home. For the, before the change, they could do it. Now they have to go to court and seek approval. And the judge may say 24 hours, but. You know, given the. Discussion about distrust of the state's motives in the past. I assume that's going to be a adversarial proceeding. That may take time. While you have this. Live threat that the state is at least alleging. That seems to be an important. Substantive dimension to this. That could medically harm the lives of a child. Judge how. I would, I would agree with that. If the premise were correct. The premise that the state would have to. I mean, frankly, even if the premise were correct. It wouldn't be an issue just as a realistic matter because. Judge Jack really does make herself 24 seven available for this case. But. More importantly. The type of transfer you are talking about. Would not be within the scope of this order. The, the approval provision says if you are moving a child. Because of the full-time supervision requirement. Not because if you have a home that already has full-time supervision. And there's some other threat, some threat arises there. And you're moving those children. That that you're not moving them because of the order. Okay. But that could be a fact dispute. Right. The state could say, here's our reason. And the plaintiffs could say, that's not true. Your reason is just to, to evade. Wouldn't there have to be some sort of adversarial proceeding to figure this out? Otherwise, what's the point. If. I don't think so. Your honor, in particular, if. If the home has full-time supervision. Then it clearly would not fall under this order. Now. Maybe to, to switch up the hypothetical a little bit. Yes. Yes. The home had full-time supervision. And. You learn that. That there was something wrong with the. The staffer who was providing full-time supervision. And that person had to be removed. From that position. And all of a sudden you had children who were without full-time supervision. That. That might. That might fall within the scope of the approval provision. But I think that's, you know, The judge would be very responsive. I agree. I assume you'd agree though. And I appreciate you working with the terms. I, I, I think I appreciate your point that there have to be a specific fact pattern, but I don't think it's a fanciful fact pattern. You agree that there could very well be a fact dispute that would then have to be resolved. The state says this, this, the, the, the 24 hour person is unsafe. We're moving them. And we, you know, we don't have time to find somebody else. So we're just going to start transferring these kids to a safer environment. And you say, no, that's not true. This is a sham. The state's lying again. And we want our day in court. Wouldn't that take some time. That. That might take some time. I think that that would be a situation where, if there were a real emergency where you could resolve any potential fact dispute. At a later time, you know, the state could, the state could move the children say it's an emergency. And if, if a contempt proceeding came up, that would be. That would be part of their showing cause why they shouldn't be held in contempt because, because that was not. Not a violation. The dice that's really rolling the dice to have to say, well, we're going to respond to the contempt proceeding against us with this evidence. That's, that's, that's a risky move for a client. To have to do council. You previously said that a court such as ours can say we're done. We're not going to do anymore. We've had five appeals and we're done. This mandate says specifically without further changes. Do you agree that the court was trying to say it was done? I think your honor that the court may be saying that it's done with the substantive reforms, but that this order that we're here talking about does not fall into that category. It goes toward to begin implementing, which is the other, the other three word phrase that is, that is in that operative provision of Stukenberg to the, the mandate also affirmed the termination provision of the permanent injunction, whereby the district court is to retain jurisdiction for a period of three years after the state comes into compliance. So this court contemplated that this would be a multi-year process and surely contemplated that there would be administrative issues that came up along the way. It said also in Stukenberg too, with regard to the, the modification to the original injunction to say that the state, that the court and the monitors will exercise supervision over the state's workload studies, that a district court always has the implicit power to ensure compliance with its injunctions. And that's what we think this provision does. Counsel, I guess this is, you've called this administrative a hundred times, many, many times. But you've also said that it creates injunctive rights and new grounds on which you, your client can see contempt findings against the state. Why, why do you use this term administrative and what does it give us if it is actually a new ground on which they can be held in contempt, whether you label it administrative or not, it's still a new ground on which they can be held in contempt. Judge Elrod, the approval provision cannot be divorced from the full-time supervision injunction because it applies only to situations that directly result from the full-time supervision injunction. So it is, you know, it is, it cannot be divorced from that, which shows that it is, it is directly tied to implementing that injunction. It says, you know, if there is a, if there's a move that needs to be made because of the full-time supervision  injunction, there's no indication that the district court would unreasonably withhold approval approval. There's there's no indication that the state even feels the need to invoke, invoke this provision. If the state comes into full compliance with the full-time supervision order and that is certified, that will be a grounds for for ending this litigation. And once it's in full compliance with, with the overall injunction and the approval provision. Judge Elrod, I'd like to ask a question just to, so I can follow up on it with on rebuttal. Counsel under a normal injunction, let's say the injunction is in, in the record and then several months later, the one of the parties feels like the other party is not in compliance with the injunction. You would go into some form of contempt proceeding, wouldn't you? Yes, Your Honor. Well here, it seems like the contempt proceeding was held before the injunction was fully in effect. And I could be wrong on my dates, but I don't know why. The district judge in effect has written a new injunction provisions rather than just take this on a case by case contempt proceeding basis. Your Honor, the full-time supervision injunction went into effect on July 31st of last year. Yeah. And the, the contempt proceedings began with our motion to show cause in October that year. So the, the contempt, the contempt proceedings were targeted to compliance with the full-time supervision injunction. But in effect, the district judge has rewritten the injunction, which is contrary to what our court ordered. I don't know why this couldn't have followed a separate track and not rewritten the injunction that our court in the second Zuckerberg case, you know, said we're getting rid of all of these items. You can keep these now implement this without further changes. I think the, the approval provision is intended to implement the full-time supervision injunction. But you told me the injunction was already in effect. The, the full-time supervision injunction was in effect and the state was not in compliance with it by November of last year. Well then start a separate proceeding, but don't rewrite the injunction. Well, I just wanted to tee this up. Thank you, judge. Thank you, Your Honor. You're on mute, judge. I see that. I'm sorry, Mr Ward. You have, we have your argument. Mr Hughes, you may have your rebuttal. Thank you, judge. I'll run. I may please the court. Just a couple of points in response. Uh, judge Barksdale. I was going to address your question last, but unless you have further questions, I think I believe you satisfied it with Mr Ward. Um, the way he laid it out was correct. The prior injunction or the, the, uh, awake night supervision order was the one that was at issue in the November contempt hearing. And this new injunction arose at the tail end of that contempt hearing. Um, it just came out. It wasn't something that plaintiffs asked for. So I think you're correct. And looking at it as saying, this is a new injunction and it should be on a separate track. And for that reason, it violates the mandate rule. So speaking of the separate track, let's purely argue. I know hypothetically, let's say we agree that there is a mandate rule violation, but that we also, again, hypothetically agree that this new provision might be worth considering. Is that something that this panel can consider, or is that something that has to be saved for a future panel? Uh, judge how, if the court concludes there's a mandate rule violation, then I don't see how that issue is properly before the court. Um, when it hasn't been raised in a procedurally proper way. And as I talked about earlier, there are ways conceivably that, uh, through rule 60 B, perhaps the changes could be considered, but the whole purpose of the no further changes language was to, to very carefully circumscribe, uh, changing the parameters of the injunction. Um, cause I mean, I take your point about 60 B, but under this mandate rule theory, that is a sort of a futile proceeding, isn't it? It would, I think it should be with respect to this particular change precisely because it's a substantive amendment when there wasn't cause shown for the need of it. Again, if the complaint is we're not complying with the wake night supervision, we can be held in contempt for that as we were, but that's not a reason for rewriting the injunction. That's a reason for enforcing that injunction. And I take your point. That sounds like you're basically litigating that new provision on the merits. My point is, is it's a nuanced point, but it's a process point. Can we, on this panel engage in that discussion and say, we agree with this new provision, or we, if you say disagree with the provision, can we do that today? Or does that need to be saved for a future panel? Uh, and I, at the risk of repeating myself, judge ho, I would say it would be improper for the court to do it. If there's a mandate rule violation, any, any discussion would be dicta. And then I think we get into the problem that what this panel might think about it, unless the panel reserved the case for itself or subsequent appeals as the prior panel did. Any future appeal would come to a different panel and they might feel differently about it. And I suggest that that raises more concerns than, um, perhaps would be warranted to do. Uh, council talked, uh, about the contempt order is correct. We did not appeal that. And it's correct. We were not in compliance with it because of the cottage homes. Um, but that does, because we did not appeal, it does not mean we accepted all of the findings that went in that contempt order. And I specifically just wanted to raise the point of the, what we have been accused of, of misrepresenting or, uh, lying to this court about our compliance with the original foster group home supervision order. That is simply inaccurate. Our representations of compliance were correct. They did not somehow become retroactively false. When the district court issued a different order that expanded awake night supervision, that order did not take effect until the end of July of last year. Uh, we did not represent to this court that we weren't, we're complying with it because that order had not taken effect yet. And so the notion that, uh, as regrettable as Lisa blacks, incorrect testimony was, It did not cause us to make any misrepresentations to this court or to the district court about complying with the wake night supervision orders. Council also raised the point that we can always go to the court through the monitors. And I'd point out there with the cottage homes, we did that in September of last year. And we said, it's not clear to us how this expanded, uh, awake night requirement applies in the cottage home context where many of the cottages have six or fewer kids. And the monitors took that back to the court and they understood that we were in a holding pattern. And then we get to the show cause hearing in November, the monitors filed a report on the eve of the hearing and were excoriated for taking the position that awake night supervision should not apply in cottages of six or fewer homes, which is. I think entirely consistent with the prior ruling that there's no constitutional risk to children in placements of six or fewer homes. Um, the last point I just want to make very briefly is the monitors and their staff who now number 43 have already billed the state seven and a half million dollars for their work. The collective billing rate is approaching $10,000 an hour. And we've urged the court to enforce the mandate rule. So allow us to bring an end to this litigation. Thank you. Thank you. Thank you council for your arguments today. This case is submitted. And this concludes our arguments for today. And we will resume tomorrow afternoon to continue hearing cases on the docket. Thank you.